IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JOHNNY ISHMEL HENRY**                                              **PLAINTIFF**

**VS.**                                                     **CIVIL ACTION NO.: 2:09CV99-KS-MTP**

**GOOGLE, INC. AND AOL**                                       **DEFENDANTS**

---

**DEFENDANT GOOGLE, INC.'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
WITH PREJUDICE PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), (4), (5) & (6) AND 4(h)**

---

**AND NOW**, having filed its Motion to Dismiss, Defendant Google, Inc. ("Google") now submits its Memorandum in Support thereof as follows:

### INTRODUCTION AND FACTS

On May 20, 2009, Plaintiff John Henry, acting *pro se,* filed a Complaint against Defendant Google and Co-Defendant AOL. *See* Complaint, attached to Motion to Dismiss as Exhibit "A". Plaintiff attempted service on Google by mailing copies of an insufficient Summons and a Proof of Service to Google's headquarters. Plaintiff did not include a copy of the Complaint in the envelope. *See* copy of envelope, Summons, and Proof of Service, attached collectively to Motion to Dismiss as Exhibit "B". Plaintiff's Complaint alleges, among other things, that he suffered "enormous mental harm, emotional suffering, and sleepless nights" as a result of information posted about him on certain websites listed in the Complaint. *See* Complaint and attached documents, attached to Motion to Dismiss as Exhibit "A". It appears that Plaintiff is alleging that he has been harmed by Google merely because links to the postings that are attached to Plaintiff's Complaint appear in the results of a search for

"vibrating toilet seat" on Google's search engine. Plaintiff does not allege, nor could he, that Google has any connection whatsoever to websites mentioned in the Complaint or that any of the allegedly defamatory statements originated with Google in any way whatsoever.

Plaintiff's Complaint should be dismissed for the multitude of reasons discussed herein, including insufficient process, insufficient service of process, failure to comply with Federal Rule of Civil Procedure 10(b), and failure to properly assert diversity jurisdiction. Additionally, Plaintiff never could impose liability under the common law claims upon which he has sued. Plaintiff has not and cannot state a cause of action for which relief can be granted pursuant to longstanding federal law. Under the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), Congress has granted interactive service providers, such as Google, broad statutory immunity from content-based claims, such as those at issue here, when the information posted to the Internet was posted by third parties. Plaintiff's claim must be dismissed with prejudice at the outset. Immunity aside, Plaintiff has otherwise failed to state a valid claim against Google under Mississippi law and the action should be dismissed with prejudice on that basis as well.

## STANDARDS FOR DISMISSAL

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face". *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007) (emphasis added). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

A motion to dismiss pursuant to Rule 12(b)(5) turns on the legal sufficiency of the service of process. *Holly v. Metropolitan Transit Authority*, 213 Fed. Appx. 343, 344, 2007 WL 98364, *1 (5th Cir. 2007). The party making service has the burden of demonstrating its validity when an objection to service is made. *Id.*

## ARGUMENT

### I. DISMISSAL BASED ON FEDERAL RULE OF CIVIL PROCEDURE 12(b)(4) - INSUFFICIENT PROCESS

#### A. Summons

Federal Rule of Civil Procedure 4(a)(1)(A) provides that a summons must, "name the court and the parties." *See* Federal Rule of Civil Procedure 4(a)(1)(A). The summons that Plaintiff attempted to serve Google with does not name the subject court. *See* Summons, attached to Motion to Dismiss as Exhibit "B". Therefore, all claims against Google must be dismissed. *See Wells v. Ali*, 304 Fed. Appx. 292, 295, 2008 WL 5381308, *3 (5th Cir. 2008) (affirming dismissal of all claims based on Plaintiff's failure to comply with Federal Rule of Civil Procedure 4(a)(1)(A)).

### II. DISMISSAL BASED ON FEDERAL RULE OF CIVIL PROCEDURE 12(b)(5) - INSUFFICIENT SERVICE OF PROCESS

#### A. Failure to Serve Complaint

Federal Rule of Civil Procedure 4(c)(1) provides that a "summons must be served with a copy of the Complaint." *See* Federal Rule of Civil Procedure 4(c)(1). Plaintiff has not provided Google with a copy of the Complaint. Plaintiff sent Google certified mail enclosing only copies of the insufficient Summons and Proof of Service. Therefore, all claims against Google must be dismissed. *See Amous v. Trustmark Nat. Bank*, 195 F.R.D. 607, 610 (N.D. Miss. 2000) (holding Plaintiff failed to comply with Federal Rule of Civil

- 3 -
PD.398452.1

Procedure 4(c)(1) because Plaintiff did not serve a copy of the complaint along with the summons.).

### B. Improper Method of Service

Plaintiff's attempted method of service was to send Google, via certified mail, copies of the insufficient Summons and Proof of Service. This is insufficient service of process. Federal Rule of Civil Procedure 4(h) outlines the proper procedure for service of process upon a corporate entity such as Google. Specifically, Rule 4(h) provides:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name must be served:
> (1) in a judicial district of the United States:
>   (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>   (B) by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process and-if the agent is one authorized by statute and the statute so requires-by also mailing a copy of each to the defendant….[1]

Federal Rule of Civil Procedure 4(e)(1) provides:

> following state law for serving a summons in an action brought in court of general jurisdiction in the state where the district court is located or where service is made.[2]

There is no method under Federal Rule of Civil Procedure 4(h) for serving a corporate defendant by mail. Therefore, Plaintiff failed to properly serve Google under Rule 4(h).

Pursuant to Federal Rule of Civil Procedure 4(e)(1), Plaintiff could have followed the state law of either Mississippi (state where this district court is located) or California (state where service was attempted) to effect proper service on Google. However, Plaintiff failed to comply

---

[1] Fed. R. Civ. P. 4(h).
[2] Fed. R. Civ. P. 4(e)(1).

with the law of both states.

There are two methods under the Mississippi Rules of Civil Procedure whereby Plaintiff could have effected proper service upon Google by mail. However, Plaintiff failed to comply with the requirements of Mississippi Rules of Civil Procedure 4(c)(3)(A) or 4(c)(5).

Rule 4(c)(3)(A) allows service of process "by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment ..." *Young v. Sherrod*, 919 So. 2d 145, 148 (Miss. Ct. App. 2005); *See also* Miss. R. Civ. P. 4(c)(3)(A). The Summons was insufficient, Plaintiff did not mail a copy of the Complaint, nor did he include two copies of a notice and acknowledgment. Clearly, Plaintiff did not comply with the requisites of Rule 4(c)(3)(A).

Pursuant to Rule 4(c)(5) of the Mississippi Rules of Civil Procedure, service of process upon a person outside Mississippi may be accomplished "by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested." *Worthy v. Trainor*, 2009 WL 1758939, *1 (Miss. Ct. App. 2009); *See also* Miss. R. Civ. P. 4(c)(5). Once again, the summons was insufficient and Plaintiff did not mail a copy of the Complaint. Clearly, Plaintiff did not comply with the requisites of Rule 4(c)(5).

California Civil Procedure Code § 415.30 provides the proper method for service of process by mail under California law. Specifically, § 415.30 provides, "A summons may be served by mail as provided in this section. A copy of the summons and of the complaint shall be mailed (by first-class mail or airmail, postage prepaid) to the person to be served, together with two copies of the notice and acknowledgment provided for in subdivision (b) and a return envelope, postage prepaid, addressed to the sender." Cal. Civ. Proc. Code § 415.30. Once again, the Summons was insufficient, Plaintiff did not mail a copy of the Complaint, nor did he include

two copies of a notice and acknowledgment. Clearly, Plaintiff did not comply with the requisites of § 415.30.

Plaintiff failed to properly serve Google under the Federal Rules of Civil Procedure or under the laws of the states of Mississippi or California. Therefore, service of process was insufficient and all of Plaintiff's claims must be dismissed.

### C. Failure to Serve Proper Corporate Agent

Plaintiff merely attempted to serve Google by sending the certified mail to "Google Headquarters, Google, Inc., Legal Department." *See* copy of envelope and Summons, attached to Motion to Dismiss as Exhibit "B". Neither the Federal Rules of Civil Procedure, the Mississippi Rules of Civil Procedure, nor the California Civil Procedure Code allow for such general service upon a corporation. Federal Rule of Civil Procedure 4(h)(1)(B) and Mississippi Rule of Civil Procedure 4(d)(4) both require that service on a corporation be made on "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service or process."[3] The California Civil Procedure Code also precludes service on a corporation generally.[4] In addition to his other service deficiencies, Plaintiff has also failed to serve the proper corporate agent. Therefore, Plaintiff's claims must be dismissed.

---

[3] *See* Federal Rule of Civil Procedure 4(h)(1)(B) and Mississippi Rule of Civil Procedure 4(d)(4).
[4] California Civil Procedure Code § 416.10 provides in pertinent part:

A summons may be served on a corporation by delivering a copy of the summons and of the complaint:

(a) To the person designated as agent for service of process as provided by any provision in Section 202, 1502, 2105 or 2107 of the Corporations Code (or Sections 3301 to 3303, inclusive, or Sections 6500 to 6504, inclusive, of the Corporations Code as in effect on December 31, 1976 with respect to corporations to which they remain applicable);

(b) To the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process;

### III. DISMISSAL BASED ON FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) - FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A. Plaintiff's Claims Are Barred As A Matter Of Law By Section 230(C)(1) Of The Communications Decency Act

##### 1. Congress Determined That Traditional Standards of Publisher and Distributor Liability Should Not Apply in the Context of the Internet

Section 230 of the CDA provides in pertinent part:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.[5]

"In October 1998, Congress recognized the rapid development of the Internet and the benefits generated by Web-based service providers to the public." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *See* 47 U.S.C. § 230(a) (acknowledging that "interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity" and have "flourished ... with a minimum of government regulation"). "In light of its findings, Congress enacted the CDA for several policy reasons, including 'to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material.'" *Doe* at 418 (*citing* § 230(b)(4)). "To achieve that policy goal, Congress provided broad immunity under the CDA to Web-based service providers for all claims stemming from their publication of information created by third parties, referred to as the "Good Samaritan" provision." *Doe* at 418 (*citing* § 230(c)(1)) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."). "Indeed, '[n]o cause of action

---

[5] 47 U.S.C. § 230.

may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.'" *Doe* at 418 (*citing* § 230(e)(3)). "Courts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content." *Doe* at 418 (*citing Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3rd Cir. 2003); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003); *Batzel v. Smith*, 333 F.3d 1018, 1030-31 & n. 19 (9th Cir. 2003); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 984-86 (10th Cir. 2000); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)).

As court after court has explained in interpreting the CDA, the CDA was passed because Congress was concerned about the chilling effect on the accessibility to the free flow of information on the Internet if interactive service providers were held liable for content created by others. *See e.g., Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum"). Thus, for policy reasons, Congress decided that only those who originally authored allegedly harmful content may be held liable for any harm caused by the availability of such content on the Internet. *See, e.g., id.* at 330-31 ("Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties potentially injurious messages.").

Accordingly, with very limited exceptions not applicable here, Congress made interactive computer service providers such as Google immune from civil liability stemming from content originating with third parties. *See Doe* at 419 (*quoting* the Ninth Circuit in

*Carafano* at 1124, "[u]nder § 230(c), ... so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."); *See also Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) ("[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'") (*quoting Zeran*, 129 F.3d at 330 (4th Cir. 1997)).

### 2. The CDA Immunizes Internet Companies Such as Google From Claims Arising Out of Content Originating With a Third Party

Since the CDA's inception, there has been an unbroken line of dozens of cases invoking Section 230(c)(1) immunity to shield service providers like Google from claims arising out of Internet content that originates with a third party, regardless of the nature of the claim or whether the service provide has had notice of the allegedly harmful content. *See, e.g.*, *Doe* at 418 ("Congress provided broad immunity under the CDA to Web-based service providers for all claims stemming from their publication of information created by third parties…."); *Zeran*, 129 F.3d 327 at 330; *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (dismissing claims against Google arising out of Google search results and archives, which reflect content prepared by third parties); *Novak v. Overture Services, Inc.*, 309 F. Supp. 2d 446, 452-53 (E.D. N.Y. 2004) (dismissing claim against Google arising out of material posted by third party on Google's online discussion groups); *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) ("§ 230 provides immunity" and "'precludes courts from entertaining claims that would place a computer service provider in a publisher's role' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone, or alter content'");

*Carafano* at 1123 (recognizing that the 9th Circuit had "joined the consensus developing across other courts of appeals that § 230(c) provides broad immunity for publishing content provided primarily by third parties'").

Immunity from state law claims under the CDA requires that, "the party claiming the immunity must be, first, a provider or user of an interactive computer service. Second, the alleged defamatory statement must be made by a third party. Third, the defamation claim the party seeks immunity from must treat the interactive computer service as the publisher or speaker of the alleged defamatory statement." *Smith v. Intercosmos Media Group, Inc.*, 2002 WL 31844907, *2 (E.D. La. 2002).

### 3. All Three CDA Immunity Criteria are Met Here as a Matter of Law

#### (i) Google provides "Interactive Computer Services."

There can be no dispute that Google provides an "interactive computer service." The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C. § 230(f)(2).

Courts routinely have held that Google, and other similar providers, are interactive computer services for purposes of the CDA. *See, e.g., Parker*, 422 F. Supp. 2d at 501 (finding in context of claim against Google as Internet search engine that "there is no doubt that Google qualifies as an 'interactive computer service'"); *Novak*, 309 F. Supp. 2d at 452 (applying section 230(1)(c) immunity to Google as host of Internet discussion group); *see also Donato*, 865 A.2d at 487-88 (operator of electronic community bulletin board website qualified as "interactive computer service"); *Carafano* at 1123 (online matchmaking service held to be interactive service provider under § 230(c)); *Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d

1238, 1249 (D. Minn. 2005) (defendants "who run web sites on which internet users can post comments[] are providers of interactive computer services" under the CDA); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 538 (E.D. Va. 2003) ("the parties agree, as they must, that AOL is an 'interactive computer service provider' as defined by § 230").

> **(ii) Plaintiff admits that the allegedly defamatory statements were made by third parties.**

Plaintiff's Complaint admits that his photograph and the defamatory statements were displayed on the certain websites listed in the Complaint. However, Plaintiff incorrectly alleges that he is "filing this lawsuit in reference to being called and depicted as a 'N----,' on two of the internet service provider search engines, Aol and Google."

Of course, Google is not the publisher of the content complained of by Plaintiff. Nor is Google in the business of publishing content on the Internet. Rather:

> Google maintains a website that provides search technology, allowing users to search for, among other things, websites, products, and images. Google provides this service by "crawling" the web and then organizing the content in a searchable Web index. When a user types in a query, Google's proprietary technology produces a list of hyperlinks organized by their relevance and reliability. In the course of providing this service, Google makes a copy of each website and stores it in a "cache," a temporary storage tool. When it produces a list of results for a particular query, Google often includes links to these caches, noting that they are archival copies of the original web pages. Google also maintains the USENET, a "global system of online bulletin boards" . . . . and allows users to post and search archived messages on the system.

*Parker*, 422 F. Supp. 2d 492 at 495. Thus, in its search results Google displays "snippets" of content that are taken directly from each webpage displayed in the results, along with a link to that page. By seeking to hold Google liable for content that was published by a third party, however, Plaintiff attempts to treat Google as the "publisher" of such information. This is clearly prohibited by Section 230 of the CDA.

- 11 -
PD.398452.1

### (iii) Plaintiff concedes that the allegedly harmful information did not originate with Google.

Finally, it is apparent upon a review of the documents attached to the Complaint that the allegedly defamatory statements which form the basis of Plaintiff's Complaint originated with someone other than Google, namely, whoever originally submitted the allegedly harmful information to the websites identified in the Complaint. "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron*, *Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). If an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

Here, there can be no allegation that the allegedly harmful content originated with Google, because Google, by its very nature, merely facilitates access to content created by others. Additionally, Plaintiff concedes that the allegedly harmful content did not originate with Google. In the documents attached to the Complaint, Plaintiff identifies the author of the allegedly defamatory statements. *See* Complaint and attached documents, attached to Motion to Dismiss as Exhibit "A".

It is clear that the allegedly harmful content did not originate with Google. Thus, based upon the face of the Complaint and the documents attached thereto, Section 230(c)(1) immunity bars Plaintiff's claims against Google as a matter of law and the Court should dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Green*, 318 F.3d at 468; *Parker*, 422 F. Supp. 2d 492 at 495; *see also, U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.* at 377.

### B. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted Under Mississippi Law

Even if Google did not have immunity from Plaintiff's claim pursuant to Section 230(c)(1) of the CDA, which it does, Plaintiff's Complaint fails to state a claim upon which relief can be granted under Mississippi law. To the extent Plaintiff is attempting to allege claims for defamation, Plaintiff fails to state a cause of action.

To prove defamation under Mississippi law, the following elements must be shown: (a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) either actionability of statement irrespective of special harm or existence of special harm caused by publication. *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001).

As to Google, Plaintiff fails to assert any of the necessary elements to prove a claim for defamation. Indeed, Plaintiff admits that Google was not the publisher of the allegedly defamatory statements.

### IV. DISMISSAL BASED ON FEDERAL RULE OF CIVIL PROCEDURE 10(b)

Federal Rule of Civil Procedure 10(b) requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See* Federal Rule of Civil Procedure 10(b). Plaintiff failed to state its claims in numbered paragraphs. *See* Complaint, attached to Motion to Dismiss as Exhibit "A". Therefore, Plaintiff's Complaint should be dismissed.

### V. DISMISSAL BASED ON FAILURE TO ESTABLISH DIVERSITY JURISDICTION

It appears that Plaintiff is attempting to establish subject matter jurisdiction based on diversity jurisdiction. However, this Honorable Court may only exercise diversity jurisdiction (1) if the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, and (2) is between citizens of different states. 28 U.S.C. § 1332(a).

Plaintiff's Complaint fails to allege an amount in controversy. Therefore, the requisite amount in controversy has not been pled and the Complaint should be dismissed.

## **CONCLUSION**

Google respectfully requests this Honorable Court enter an order dismissing Plaintiff's Complaint against it in its entirety with prejudice. Both service of process and the process itself were insufficient. Furthermore, as demonstrated herein, Section 230 of the CDA affords service providers like Google with absolute immunity from suits, such as Plaintiff's, which arise from allegedly harmful content that originates with third parties. Consequently, because Plaintiff's claims are barred as a matter of law, the Court should dismiss Plaintiff's Complaint with prejudice. Additionally, even if Plaintiff's claims were not precluded by the CDA, which they are, Plaintiff has failed to state any claim upon which relief can be granted under Mississippi law. Google, therefore, respectfully requests that its Motion to Dismiss Plaintiff's Complaint with Prejudice be granted in its entirety.

WHEREFORE, Defendant Google, Inc. respectfully requests that this Honorable Court enter an Order granting its Motion to Dismiss Plaintiff's Complaint with prejudice on the grounds set forth herein.

**RESPECTFULLY SUBMITTED**, this 29th day of July, 2009.

        GOOGLE, INC.

        PHELPS DUNBAR LLP

BY:   s/ Michael Held
       Kyle S. Moran, MSB #10724
       Michael Held, MSB #101942
       PHELPS DUNBAR LLP
       NorthCourt One • Suite 300
       2304 19th Street
       Gulfport, Mississippi 39501
       Telephone: (228) 679-1130
       Telecopier: (228) 679-1131
       Email:morank@phelps.com
             heldm@phelps.com

# CERTIFICATE OF SERVICE

I, Michael Held, certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following:

>Roland M. Slover
>Phillip S. Sykes
>Forman Perry Watkins Krutz & Tardy LLP
>P.O. Box 22608
>Jackson, MS 39225-2608
>***Attorneys for AOL LLC***

and I hereby certify that I have mailed, via certified United States mail, return receipt requested, the foregoing to the following non-ECF participant:

>John I. Henry
>P. O. Box 328
>Soso, MS 39480
>***Plaintiff***

This, the 29th day of July, 2009.

>s/ Michael Held
>MICHAEL HELD